IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXOSMITHKLINE BIOLOGICALS SA and GLAXOSMITHKLINE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC., PHARMACIA & UPJOHN CO. LLC, BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC.,<br><br>Defendants. | Civil Action No. 24-512-GBW |
| GLAXOSMITHKLINE BIOLOGICALS SA and GLAXOSMITHKLINE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MODERNA, INC., MODERNATX, INC., and MODERNA US, INC.,<br><br>Defendants. | Civil Action No. 24-1135-GBW |
| GLAXOSMITHKLINE BIOLOGICALS SA and GLAXOSMITHKLINE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MODERNA, INC., MODERNATX, INC., and MODERNA US, INC.,<br><br>Defendants. | Civil Action No. 24-1136-GBW |

## **MEMORANDUM ORDER**

Pending before the Court are letters from the parties,[1] in Case Nos. 24-512, 24-1135, and 24-1136, disputing various provisions of the parties' proposed protective orders and protocols for discovery.[2] Below, the Court resolves each of these disputes. The Court writes for the benefit of the parties and, as such, only briefly references (in the Discussion Section) those facts that are necessary for resolution of the parties' disputes.

## I.     LEGAL STANDARD

"Federal Rule of Civil Procedure 26(c) permits the District Court to enter a protective order to shield a party 'from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 670-71 (3d Cir. 2019) (citing Fed. R. Civ. P. 26(c)(1)). "A protective order is 'intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings.'" *Id.* at 671 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 775 (3d Cir. 1994)). "A protective order may apply to all litigation materials — not just those filed in court." *Id.*

"The party seeking a protective order over discovery material must demonstrate that good cause exists for the order." *Id.* (cleaned up). "Good cause means that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (cleaned up). "The injury must be shown with specificity." *Id.* (citation omitted). "To that end, broad allegations of harm,

---

[1] The parties include (1) Plaintiffs GlaxoSmithKline Biologicals SA and GlaxoSmithKline LLC ("Glaxo" or "Plaintiff"); (2) Defendants Pfizer Inc., Pharmacia & Upjohn Co. LLC, BioNTech SE, BioNTech Manufacturing GMBH, and BioNTech US Inc. ("Phizer"); and (3) Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US Inc. ("Moderna").

[2] Case No. 24-512: D.I. 71, D.I. 72; Case No. 24-1135: D.I. 51, D.I. 52, D.I. 53, D.I. 54; Case No. 24-1136: D.I. 54, D.I. 55, D.I. 56, D.I. 57.

2

unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* (cleaned up).

The Third Circuit has "set forth various factors — which are neither mandatory nor exhaustive — that courts may consider when determining whether good cause exists and, by extension, whether a protective order should issue:

1. whether disclosure will violate any privacy interests;

2. whether the information is being sought for a legitimate purpose or for an improper purpose;

3. whether disclosure of the information will cause a party embarrassment;

4. whether confidentiality is being sought over information important to public health and safety;

5. whether the sharing of information among litigants will promote fairness and efficiency;

6. whether a party benefitting from the order of confidentiality is a public entity or official; and

7. whether the case involves issues important to the public."

*Id.* (citations omitted). "The District Court is best situated to determine what factors are relevant to any given dispute." *Id.* (cleaned up). "The Court's analysis, however, should always reflect a balancing of private versus public interests." *Id.* at 671-72 (cleaned up). "The District Court should articulate on the record findings supporting its decision to grant or deny a protective order." *Id.* (cleaned up).

## II.   DISCUSSION

The Court divides its Discussion into two Sections: (A) The Court's Resolution of the Disputes in Case No. 24-512; and (B) The Court's Resolution of the Disputes in Case No. 24-1135 and Case No. 24-1136.

A.   **The Court's Resolution of the Disputes in Case No. 24-512**

Phizer filed a letter brief setting forth three proposals (D.I. 71) and Glaxo opposed each of these proposals and/or made counter-proposals (D.I. 72). The Court will address each of these three disputes in turn.[3]

*First*, Phizer proposes "that the definition of 'Expert' should exclude persons who have 'been an officer, director, or employee of a Party or an Affiliate within the last five (5) years.'" D.I. 71 at 1. Phizer reasons that "the risk of harm to [Phizer] outweighs any articulable need by [Glaxo] to retain as an expert any former officer, director, or employee of [Phizer] or their affiliates within the last five years." D.I. 71 at 1. Phizer further reasons that Glaxo alleges that Phizer's "allegedly infringing conduct [began] on December 11, 2020" and that "[f]ormer employees within this five-year timeframe who would qualify as experts in this case likely possess [Phizer's] confidential information, trade secrets, or proprietary information gained during employment" and that "their retention as experts" by Glaxo "would unnecessarily risk disclosure of such information to [Glaxo]." D.I. 71 at 1.

"Federal courts have the inherent power to disqualify experts." *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, No. 11-cv-54-SLR, 2012 WL 4815593, at *1 (D. Del. Oct. 10, 2012) (citing *Syngenta Seeds, Inc. v. Monsanto Co.*, Civ. No. 02-1331, 2004 WL 2223252, at *1 (D. Del. Sept. 24, 2004)). "While there is no bright line rule for expert disqualification, courts have generally adopted a two-part disqualification inquiry: (1) was it objectively reasonable for the party seeking disqualification to have concluded that a confidential relationship existed with the expert; and (2) was confidential or privileged information actually disclosed to the expert." *Id.* (footnote and citations omitted). "Affirmative answers to both inquiries ordinarily compel disqualification;

---

[3] All citations in this Section are to documents in Case No. 24-512.

4

however, 'disqualification is likely inappropriate if either inquiry yields a negative response.'" *Id.* (citations omitted). "The party seeking the disqualification bears the burden of proof with respect to both factors." *Id.* (citation omitted).

Here, unsurprisingly, Phizer fails to demonstrate, and the Court is unable to examine, whether any "confidential or privileged information" was "actually disclosed to the [yet-to-be engaged] expert[(s)]." *See id.* At least on this basis, the Court rejects Phizer's proposal as premature and overbroad.

*Second*, the parties propose prosecution and regulatory bars that differ in scope. *See* D.I. 71 at 2; D.I. 72 at 2-3. The "determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Under Federal Circuit law, the same "burden of showing good cause for" a contested provision in a proposed protective order extends to provisions on prosecution bars. *Id.* To assess good cause, "the Court must balance the risk of inadvertent use or disclosure of proprietary competitive information (acquired during litigation) against the 'potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice.'" *Seoul Semiconductor Co. v. Tech. Consumer Prods.*, No. 1:24-cv-579, 2025 U.S. Dist. LEXIS 12755, at *2 (D. Del. Jan. 24, 2025) (quoting *In re Deutsche Bank*, 605 F.3d 1373, 1380).

"Whether there is an unacceptable risk of inadvertent disclosure turns on the extent to which counsel is involved in 'competitive decisionmaking' with its client in connection with patent prosecution activities, *e.g.*, when counsel gives advice or participates in a client's decisions—such as on the type and scope of patent protection—in light of similar or corresponding information about a competitor." *Id.* (citing *inter alia In re Deutsche Bank*, 605 F.3d 1373, 1380). "In

evaluating the potential harm to [one of the parties] in denying them their counsel of choice, the Court considers: 'the extent and duration of [that party's] counsel's past history in representing [that party] before the [U.S. Patent and Trademark Office ("PTO")], the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO.'" *Id.* (quoting *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 184 (D. Del. 2010)).

"After balancing the risk of inadvertent use against the potential harm to [the party to which the bar would apply], the Court must also determine whether [the proponent of the bar] has shown that 'the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information.'" *Id.* at *3-4 (quoting *In re Deutsche Bank*, 605 F.3d at 1381). Courts "have consistently held that prosecution bars that are co-extensive with the subject matter of the asserted patents . . . are proper in scope." *See Bos. Sci. Corp. v. Cook Grp. Inc.*, No. CV 15-980-LPS-CJB, 2016 WL 1601238, at *3 (D. Del. Apr. 25, 2016) (collecting cases).

Here, Glaxo proposes that the prosecution and regulatory bars "should be restricted to RNA 'vaccines' to align with the subject matter at issue." D.I. 72 at 2. Glaxo asserts that its "proposal aligns with the subject matter of the asserted patents and the technology at issue" since (1) "every claim of every asserted patent specifies 'RNA' that 'compris[es] a sequence that encodes an immunogen'" and (2) such encoding "is an essential component of any RNA-based vaccine therapy." D.I. 72 at 3 (citations omitted).

Phizer proposes that the "prosecution and regulatory bars should apply to activities relating to 'formulations comprising RNA encapsulated in lipids,' not just vaccine formulations

6

comprising RNA encapsulated in lipids." D.I. 71 at 2. Phizer reasons that the word "vaccine" "does not appear in any claims" in the eight patents-in-suit and, thus, "narrowing the subject matter of the bars to include only vaccines is inconsistent with the patents-in-suit and would lead to an unacceptable risk that persons designated to receive [Phizer's] confidential information could use that information to prosecute additional patent claims that are not limited to 'vaccine' products or to take regulatory actions concerning products that are not vaccines." D.I. 71 at 2. Phizer reasons further that "a bar limited to vaccines is not sufficient to protect [Phizer's] interests in preventing their most sensitive confidential and trade secret information from being misused" since the technology at issue "has applications outside of vaccines." D.I. 71 at 2.

There are shortcomings with each of these proposals. Importantly, neither party alleges whether the other party's "counsel is involved in 'competitive decisionmaking' with [the other party] in connection with patent prosecution activities." *See Seoul Semiconductor Co.*, 2025 U.S. Dist. LEXIS 12755, at *2. As such, both parties fail to demonstrate the propriety of their proposed prosecution bars. The parties may attempt to re-negotiate the precise scope of the proposed prosecution bar and, if necessary, request a teleconference or new letter briefing on this issue.[4]

Since the Court rejects the parties' proposed prosecution bars and, since the parties' proposed prosecution bars are identical, subject-matter-wise, to their proposed regulatory bars (*see, e.g.*, D.I. 71 at 2 ("The prosecution and regulatory bars should apply to activities relating to

---

[4] The Court notes that the parties' current proposals may not reflect the scope of the asserted claims. For example, Glaxo's proposal appears to be narrower in scope than the claims in the asserted patents. In particular, if the encoding recited in the claims is, as Glaxo asserts, "an essential component of any RNA-based vaccine therapy," the Court *surmises* that a bar regarding any RNA-based vaccine therapy would not necessarily cover each instance of "'RNA' that 'compris[es] a sequence that encodes an immunogen.'" The Court likewise queries whether Phizer's proposed bar reflects the scope of the asserted claims.

'formulations comprising RNA encapsulated in lipids.'")), the Court also denies, without prejudice, the parties' proposed regulatory bars.[5]

*Third*, Phizer proposes that "[r]edactions for irrelevant commercially sensitive information outside the scope of this action should be permitted." D.I. 71 at 2. Phizer contends that "[r]esearch and development unrelated to the accused products is not only irrelevant to Plaintiffs' infringement claims, but disclosure of such information to GSK would prejudice Defendants." D.I. 71 at 2. However, parties generally cannot, "absent some agreement, redact documents for relevance." *Homevestors Of Am., Inc. v. Warner Bros. Discovery, Inc.*, C.A. No. 22-1583-RGA (*see* D.I. 72-1 at 2:24–3:2); *see Delaware Display Grp. LLC v. Lenovo Grp. Ltd.*, No. CV 13-2108-RGA, 2016 WL 720977, at *6 (D. Del. Feb. 23, 2016) (holding that "a party may not redact information that it unilaterally deems sensitive, embarrassing, or irrelevant"); *Genzyme Corp. v. Novartis Gene Therapies, Inc.*, No. 21-1736- RGA, D.I. 93 (D. Del. Dec. 6, 2022) (explaining that "[g]enerally-speaking, the Court does not favor relevance redactions, even of highly proprietary information").

---

[5] This Court has previously evaluated proposed regulatory bars under the same framework as proposed prosecution bars. *See Amicus Therapeutics US, LLC v. Teva Pharms., Inc.*, No. 22-cv-1461-CJB, 2023 U.S. Dist. LEXIS 144105, at *5-6 (D. Del. Aug. 17, 2023) ("[S]ome decisions from this District regarding whether regulatory bars should be inserted in a protective order have not utilized the *In re Deutsche Bank* factors; instead, they have looked to the *Pansy* factors set out by the United States Court of Appeals for the Third Circuit. In the Court's view . . . , it makes more sense to utilize the *In re Deutsche Bank* factors in deciding this question. To a great degree, that is because (as with an assessment of whether to enter a prosecution bar), the consideration of a regulatory bar's appropriateness will largely be focused on the risk of *inadvertent* disclosure of discovery material. In contrast, the *Pansy* factors are typically used in determining whether *intentional* disclosure of certain case materials is called for (i.e., whether a confidentiality order or a redaction order should be entered to bar such materials from public disclosure, where one side *intentionally* seeks to make public the material at issue). Additionally (and relatedly), a number of the *Pansy* factors are just not that likely to be particularly relevant to the regulatory bar/protective order calculus. So for these reasons, the Court will utilize the *In re Deutsche Bank* factors here." (cleaned up)).

The Court therefore rejects Phizer's proposal. Instead, Phizer (and Glaxo) may rely on the standard process for resolving any discovery disputes (including those disputes pertaining to relevance) that arise during the litigation.

**B.    The Court's Resolution of the Disputes in Case No. 24-1135 and Case No. 24-1136**

Moderna filed a letter brief setting forth its proposals (D.I. 51), which Glaxo opposed (D.I. 54). Glaxo also filed a letter brief setting forth its proposals (D.I. 52), which Moderna opposed (D.I. 53). The Court, consequently, divides this Section into two Subsections regarding (1) Moderna's Proposals and (2) Glaxo's Proposals.[6]

**1.    Moderna's Proposals**

The Court resolves the disputes from the parties stemming from Moderna's proposals in turn. *First*, "Moderna proposes that the definition of 'Confidential' should extend to non-public communications with regulators or other governmental bodies that are protected from disclosure by statute or regulation." D.I. 51 at 1. Glaxo states that "no dispute about [this] issue exists." D.I. 54 at 1 n.1. As such, the Court adopts Moderna's proposal.

*Second*, Moderna "proposes that any information filed under seal, marked, or subject to a protective order as 'Confidential' or 'Highly Confidential' in connection with any other judicial or administrative proceeding, remain 'Confidential' or 'Highly Confidential' (respectively) in the present action, as those orders may require such designation." D.I. 51 at 1. Moderna, however, fails to provide any support or justification for its proposal and, thus, fails to carry its burden. *See In re Avandia Mktg.*, 924 F.3d 662, 671 ("The party seeking a protective order over discovery material must demonstrate that good cause exists for the order. Good cause means that disclosure

---

[6] This Section only cites documents from Case No. 24-1135. However, since the disputes resolved by this Memorandum Order are identical in Case No. 24-1135 and Case No. 24-1136, the Court's rulings herein apply to both cases.

9

will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. To that end, broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." (cleaned up)). The Court therefore rejects Moderna's proposal.

*Third*, "Moderna proposes that outside counsel of record in this action should not be restricted from submitting new or amended claims on behalf of a party in *ex parte* reexamination, *inter partes* review, interference, opposition, or other post-grant proceeding before the PTO or other similar foreign government or agency." D.I. 51 at 1. As explained above, the "party seeking to include the patent prosecution bar provision[] 'carries the burden of showing good cause for its issuance.'" *In re Deutsche Bank*, 605 F.3d 1373, 1378 (citing *inter alia* Fed. R. Civ. P. 26(c)). "To determine the propriety of a prosecution bar, the Court must balance the risk of inadvertent use or disclosure of proprietary competitive information (acquired during litigation) against the 'potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice.'" *Seoul Semiconductor Co.*, 2025 U.S. Dist. LEXIS 12755, at *2 (citation omitted).

"Whether there is an unacceptable risk of inadvertent disclosure turns on the extent to which counsel is involved in 'competitive decisionmaking' with its client in connection with patent prosecution activities." *Id.* (citation omitted). "Attorneys substantially engaged with prosecution are regularly engaged in competitive decisionmaking." *Two-Way Media Ltd. v. Comcast Cable Communs., LLC*, No. 14-cv-1006-RGA, 2015 U.S. Dist. LEXIS 154880, at *5 (D. Del. Nov. 17, 2015) (cleaned up).

Here, Moderna represents that "outside counsel for Moderna is not involved in any competitive decision making with Moderna." D.I. 51 at 2. Glaxo does not challenge Moderna's

10

representation, instead contending that "even if Defendants' Outside Counsel are not currently involved in any competitive decision making with Moderna, that says nothing of whether they may be in the future." D.I. 54 at 2.  However, Glaxo fails to provide any support for its speculative suggestion that Moderna's outside counsel may become involved in competitive decision making with Moderna at some unspecified time in the future.  *See* D.I. 54.  Glaxo also contends (D.I. 52 at 2), but fails to show, that Moderna's outside counsel participates, or may participate, in the future in competitive decision making with other clients.  For at least these reasons, Glaxo fails to carry its burden of demonstrating good cause for extending the prosecution bar to outside counsel.  The Court therefore adopts the corresponding language in Moderna's proposal.

*Fourth*, "Moderna proposes that limited redactions of commercially sensitive information that is outside the scope of this action should be permitted on grounds of relevance." D.I. 51 at 2.  Moderna asserts that "Moderna's pipeline work is unrelated to the accused products and asserted patents and thus is irrelevant to any claim or defense in this matter" and that "disclosure of such competitive information to Plaintiffs would greatly prejudice Moderna." D.I. 51 at 2.

As described *supra* § II(A), however, a party generally cannot, "absent some agreement, redact documents for relevance." *See Homevestors Of Am., Inc.*, C.A. No. 22-1583-RGA (*See* D.I. 72-1 at 2:24–3:2); *see also Delaware Display Grp.*, 2016 WL 720977, at *6 (holding that "a party may not redact information that it unilaterally deems sensitive, embarrassing, or irrelevant"); *Genzyme Corp.*, No. 21-1736- RGA, D.I. 93 (explaining that "[g]enerally-speaking, the Court does not favor relevance redactions, even of highly proprietary information, because the net effect is to make what is produced incomprehensible, or nearly incomprehensible, and therefore useless"). The Court therefore rejects Moderna's proposal.  Instead, Moderna (and Glaxo) may rely on the

standard process for resolving any discovery disputes (including those pertaining to relevance) that arise during the litigation.

*Fifth*, in a purported "effort to track the dissemination of its proprietary, trade secret and commercially sensitive information, Moderna proposes that outside counsel be required to mark documents designated 'Highly Confidential' with an additional legend indicating the name of in-house counsel to whom the document is being provided." D.I. 51 at 2. Moderna asserts that its "proposal will enable the parties to readily identify the source of any inadvertent disclosure." D.I. 51 at 2. However, Moderna fails to provide any authority supporting this proposal and the contemplated provisions in the parties' proposed protective order will otherwise adequately safeguard the parties' confidential and highly confidential information. *See In re Avandia Mktg.*, 924 F.3d 662, 671 ("The party seeking a protective order over discovery material must demonstrate that good cause exists for the order." (cleaned up)); *ECB USA, Inc. v. Savencia, S.A.*, No. CV 19-731-RGA, 2020 WL 5369076, at *4 (D. Del. Sept. 8, 2020) ("[C]ursory arguments not fully developed by the parties are waived."). Thus, the Court rejects Moderna's proposal.

*Sixth*, and now regarding the parties' proposed Electronically Stored Information ("ESI") Order, "Moderna proposes that 'at a minimum' the parties should agree to use search terms to locate potentially responsive ESI." D.I. 51 at 2. In response, Glaxo contends *inter alia* that the "[d]efault ESI Standard allows parties to use search terms but recognizes there are other efficient means of identifying responsive content." D.I. 54 at 3.

While there is no "per se obligation" to use ESI search terms, parties must "comply with discovery obligations." *Biogen Inc. v. Sandoz Inc.*, No. 22-1190-GBW, D.I. 364 (D. Del. June 17, 2024) (citing *Topia Tech., Inc. v. Egnyte, Inc.*, No. 21-1821-CJB, D.I. 228 (D. Del. Feb. 12, 2024)). Here, Glaxo fails to "provide[] a workable alternative" (*id.*) to using search terms and, instead,

merely proposes that it "will produce relevant, responsive, non-privileged documents in proportion to the needs of the case as they are kept in the ordinary course of business, to the extent such documents are located after a reasonable search" (D.I. 54 at 3). Glaxo's proposal is insufficient in a complex matter like this action. Accordingly, the Court will order the parties to meet and confer to negotiate the use of search terms. During that conference, the parties shall consider the provisions in the Court's Default Standard for Discovery, Including Discovery of Electrically Stored Information.

*Seventh*, "Moderna proposes that [duplicate] embedded files, as well as file attachments, that contain strictly duplicative data, as well as attachments and embedded files that do not hit on the search terms run on the documents from which they were extracted may be excluded from review and production." D.I. 51 at 3. Glaxo responds that "the parties separately agreed they can withhold embedded files" (D.I. 2 n.3) and, thus, the Court grants Moderna's proposal in this respect. Glaxo contends, however, that excluding the proposed file attachments could "render documents and email families 'incomprehensible, or nearly incomprehensible, and therefore useless.'" D.I. 54 at 2 (quoting *Genzyme Corp. v. Novartis Gene Therapies, Inc.*, No. 21-1736-RGA, D.I. 93 (D. Del. Dec. 6, 2022)). The Court agrees with Glaxo and, thus, rejects Moderna's proposal in this regard.

*Eighth*, "Moderna proposes that non-responsive family members of responsive documents be identified with slip-sheets and that fully non-responsive attachments to responsive parent documents need not be produced, and may similarly be identified with slip-sheets." D.I. 51 at 3 (citation omitted). However, as similarly explained in the previous paragraph, such omissions may "render documents and email families 'incomprehensible, or nearly incomprehensible, and therefore useless." *Genzyme Corp.*, No. 21-1736-RGA, D.I. 93. The Court thus rejects Moderna's

13

proposal in this respect. Moderna otherwise "proposes that irrelevant and/or non-responsive documents should be withheld from production." D.I. 51 at 3. The Court does not see the reason for including this provision and, thus, rejects Moderna's proposal in this respect as well. The parties can rely on the normal process for resolving any discovery disputes, including those pertaining to relevance, that arise during the litigation.

*Ninth*, "Moderna proposes that corrupt or inaccessible files may be withheld and, where part of a responsive family, be identified with slip-sheets." D.I. 51 at 3. "Moderna contends this proposed language provides for a common occurrence in document production; and requiring the parties to include slip-sheets for documents withheld on this ground will streamline both the production and review of documents in this action." D.I. 51 at 3. Glaxo contends that Moderna's proposal "creates a massive loophole for withholding relevant discovery" and that "there is no requirement that documents withheld on this basis be logged or otherwise disclosed." D.I. 54 at 3. Glaxo is correct that Moderna's proposal does not adequately provide a mechanism for disclosing the existence of documents that are withheld from production. In addition, Moderna fails to provide any authority supporting its position. For at least these reasons, the Court denies Moderna's proposal.

2. **Glaxo's Proposals**

The Court resolves the disputes from the parties in connection with Glaxo's proposals in turn. *First*, the parties again "dispute the proper scope of the otherwise agreed-upon prosecution, regulatory, and competitive decision-making bars." D.I. 52 at 1. Glaxo proposes (as it did in Case No. 24-512) that "the prosecution, regulatory, and competitive decision-making bars should be limited to 'vaccines.'" D.I. 52 at 1. Glaxo contends that its "proposal aligns with the subject matter of the asserted patents and the technology at issue in this case." D.I. 52 at 1. In contrast, Moderna (like Phizer) "asks the Court to adopt its proposal that the Competition Bars apply to

14

activities relating generally to 'formulations comprising RNA encapsulated in lipids,' not just vaccine formulations comprising the same." D.I. 53 at 1.

Similar to the Court's ruling above, the Court here rejects each of the parties' proposals. Critically, neither party alleges whether the other party's "counsel is involved in 'competitive decisionmaking' with [the other party] in connection with patent prosecution activities." *See Seoul Semiconductor Co.*, 2025 U.S. Dist. LEXIS 12755, at *2. Therefore, Glaxo and Moderna (like Glaxo and Phizer) fail to demonstrate the propriety of their proposed prosecution bars. Glaxo and Moderna (like Glaxo and Phizer) may attempt to re-negotiate the scope of their proposed prosecution bar and, if necessary, request a teleconference or new letter briefing on this issue. Similar to the Court's ruling above, the Court's ruling here extends to the parties' proposed regulatory bars.

*Second*, Glaxo proposes that it "should be permitted to take discovery of defendants' awareness and evaluation of priority applications for the asserted patents going back more than six years." D.I. 52 at 2. The Delaware Default Standard for Discovery provides that, absent a showing of "good cause," discovery should "be limited to a term of 6 years before the filing of the complaint." Here, Glaxo contends that there is good cause because "[d]iscovery of Defendants' knowledge of the priority chain and their evaluation of the disclosed inventions dating back to 2010 is relevant to GSK's claims of willful infringement and Defendants' claims of prosecution laches." D.I. 52 at 2.

Glaxo is generally correct. Glaxo alleges that Moderna was "citing the named inventors' patent filings and research papers on mRNA vaccines as far back as 2013." D.I. 52 at 2. This type of information is directly relevant to the willful infringement analysis. *See 10x Genomics, Inc. v. Celsee, Inc.*, No. CV 19-862-CFC-SRF, 2019 WL 5595666, at *12 (D. Del. Oct. 30, 2019), *report*

*and rec. adopted*, No. CV 19-862-CFC/SRF, 2019 WL 6037558 (D. Del. Nov. 14, 2019) (holding that a claim of willful infringement was adequately supported by the allegation that the defendant was "monitoring" the plaintiff's "progress" in in developing a new technology, where such monitoring included the plaintiff's "patent filings"). As such, the Court adopts Glaxo's proposal.

### III.   CONCLUSION

For the foregoing reasons, the Court adopts or rejects the parties' proposed provisions in the parties' proposed protective orders and protocols for discovery as set forth above.

* * *

WHEREFORE, at Wilmington this 30th day of May 2025, **IT IS HEREBY ORDERED** that:

1. The parties shall, no later than seven (7) days from the entry of this Memorandum Order, meet and confer in attempt to negotiate final versions, of the parties' proposed protective orders and protocols for discovery, that are consistent with this Memorandum Order (including with respect to the use of search terms);

2. If the parties are able to reach agreement, they shall, no later than fourteen (14) days from the entry of this Memorandum Order, file the final versions of their proposed protective orders and protocols for discovery with this Court; and

3. If the parties are unable to reach agreement, they shall, no later than fourteen (14) days from the entry of this Memorandum Order, file a joint letter with this Court, not to exceed

two (2) pages, explaining how they would like to proceed.

                                                             GREGORY B. WILLIAMS
                                          UNITED STATES DISTRICT JUDGE