IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GLAXOSMITHKLINE BIOLOGICALS
SA, and GLAXOSMITHKLINE LLC,

        Plaintiffs,

        v.

MODERNA, INC., MODERNATX, INC.,
and MODERNA US, INC.,

        Defendants.

C.A. No. 24-cv-1135-GBW

**PUBLIC VERSION**

## MEMORANDUM OPINION AND ORDER

Pending before the Special Master is Defendant Moderna Inc.'s ("Moderna") motion to compel Plaintiffs GlaxoSmithKline Biologics SA and GlaxoSmithKline LLC (collectively, "Plaintiffs" or "GSK") to supplement their initial infringement contentions as to literal infringement and the doctrine of equivalents (DOE). D.I. 98 (the "Motion"). As to literal infringement, Moderna seeks to compel GSK to provide complete and compliant initial infringement contentions regarding the "liposomes," "lipid particles," and "cationic lipid" claim elements. *Id.* As to the doctrine of equivalents, Moderna seeks to compel GSK to provide complete and compliant initial infringement contentions regarding GSK's DOE theories. *Id.*

On September 16, 2025, Moderna submitted its opening letter brief in support of the Motion ("Op. Br."). GSK submitted its answering brief in opposition to the Motion ("Ans. Br.") on September 18, 2025, and the Special Master held a hearing on the Motion via videoconference on September 19, 2025.[1] D.I. 93.

---

[1] A court reporter was present for the September 19, 2025 hearing and provided a copy of the hearing transcript ("Hrg. Tr.") to the Special Master on September 26, 2025.

Having considered the parties' letter briefing and arguments presented at the September 19, 2025 hearing, IT IS HEREBY ORDERED that the Motion (D.I. 98) is **DENIED** for the reasons set forth below.

## I.    BACKGROUND

GSK filed this case on October 12, 2024, asserting claims against Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. (collectively, "Defendants") for infringement of U.S. Patent Nos. 11,291,682 (the "'682 patent"); 11,324,770 (the "'770 patent"); 11,596,645 (the "'645 patent"); 11,690,862 (the "'862 patent"); 11,707,482 (the "'482 patent"); 11,666,534 (the "'534 patent"); and 11,786,467 (the "'467 patent") (collectively, the "Asserted Patents"). D.I. 1.

GSK served initial infringement contentions on June 27, 2025. D.I. 71. The claim construction hearing in this case is currently scheduled for April 23, 2026, and the deadline to serve final infringement contentions is set for 30 days after the Court issues a claim construction order. D.I. 35 at 11–12.

## II.    LEGAL STANDARD

Infringement contentions serve the purpose of providing notice to the defendant of the plaintiff's infringement theories early in the case and "beyond that which is provided by the mere language of the patent." *Wi-Lan Inc. v, Vizio, Inc.*, C.A. No. 15-788-LPS, 2018 WL 669730, at *1 (D. Del. Jan. 26, 2018). The plaintiff, however, is not required to prove its infringement case in its contentions. *Id.*, at *1. "Under the Delaware Default Standard, a plaintiff in a patent infringement case is required to produce to the defendant a claim chart that relates 'each accused product to the asserted claims each product allegedly infringes.'" *AlmondNet, Inc. v. Viant Tech. LLC*, C.A. No. 1:23-cv-00174, D.I. 83, slip op. at 3 (D. Del. July 15, 2024) (quoting D. Del. Default Standard for Discovery, at ¶ 4(c)).    The plaintiff's infringement contentions "must identify where each

limitation of each asserted claim is found within each accused instrumentality." *Personal Audio, LLC, v. Google LLC*, C.A. No. 17-1751, 2018 WL 11656746, at *1 (D. Del. Nov. 15, 2018).

III.    **ANALYSIS**

> A.    **Whether GSK Must Supplement Its Initial Infringement Contentions Regarding the "Liposomes," "Lipid Particles," and "Cationic Lipid" Claim Elements.**

Moderna argues that GSK's initial infringement contentions are incomplete and do not comply with the Court's Scheduling Order because they fail to sufficiently disclose GSK's infringement theories regarding the "liposomes," "lipid particles," and "cationic lipid" claim elements. Op. Br. at 1. Specifically, regarding the "liposomes" claim element, Moderna argues that the contentions are deficient because GSK has not identified any "liposome" in Moderna's vaccines, and has not directed Moderna to anywhere in Moderna's FDA application materials that describes the existence of "liposomes" in Moderna's vaccine products. *Id.*

Moderna further argues that GSK only cites to documents produced by Moderna in this case that describe Moderna's lipid nanoparticle ("LNP") technology and that "[l]ipid nanoparticles are not liposomes." Op. Br. at 1. Moderna also contends that GSK cites no evidence suggesting that Moderna's LNP formulation contains "liposomes." *Id.* at 2. In Moderna's view, missing from GSK's contentions is the requisite "explanation or detail as to how Moderna's vaccine products meet the claim element directed to liposomes" to provide sufficient notice of GSK's literal infringement theory. *Id.* at 1–2; *see also* Hrg. Tr. 7:3–7 ("GSK's infringement contentions don't provide any explanation for how Moderna's LNP meets the liposome claim element"), 13:10–14 ("All we're looking for is an explanation, some kind of explanation, whether that includes their preliminary thoughts on a construction."), 13:18–21 ("If their explanation is tied up with a matter of claim construction, that's not really Moderna's fault.").

Regarding the "lipid particles" claim element, Moderna argues that the contentions are deficient because "no such term appears in the patents' specifications and GSK provides no explanation for what it means in the context of its infringement contentions." Op. Br. at 2. Moderna further argues the contentions offer no explanation as to how Moderna's LNPs meet the "lipid particles" limitation. *Id.* Moderna also argues that to the extent GSK has a view as to what the term "lipid particles" means in the context of the Asserted Patents, GSK's initial infringement contentions should provide "some level of preliminary explanation of that meaning and how Moderna's novel LNP vaccines meet that claim element." *Id.*; *see also* Hrg. Tr. 17:2–11 ("So it's not clear to us what the term means. . . . There's simply no guidance in the specification of the asserted patents informing Moderna as to what exactly a lipid particle is.").

Regarding the "cationic lipid" claim element, Moderna argues that GSK's contentions are deficient because although the contentions assert that Moderna's SM-102 ionizable lipid is a "tertiary cationic lipid," they do not include any explanation or commentary on how and why SM-102 acts as a "cationic liquid" and thus, meets that limitation. Op. Br. at 2–3; *see also* Hrg. Tr. 23:12–18 ("This doesn't provide any analysis of what occurs at the claimed pKa range, any analysis of what occurs at the pKa range of Moderna's SM-102 ionizable lipid, no analysis how they are the same. It's completely lacking in explanation.").

In response, GSK argues that Moderna's Motion should be denied in this regard because the contentions provide Moderna with notice of its literal infringement theory. Ans. Br. at 1 ("GSK's detailed infringement charts provided the required notice of which aspects of Moderna's accused products meet each element of each asserted claim."). GSK maintains that it provided Moderna patent-specific charts showing how each limitation of each claim element for all asserted claims is met by each accused product, including narrative descriptions, citations, and screenshots

of documents on a limitation-by-limitation basis. *Id.*

Regarding the "liposomes" and "lipid particles" claim elements, GSK maintains that the contentions specifically identify the LNPs in Moderna's accused products as corresponding to those limitations. Ans. Br. at 2 ("GSK's charts explain that the lipid nanoparticles (LNPs) in each of Moderna's accused products meet the claim terms 'liposomes' and 'lipid particles.'") (citing Op. Br. Ex. C at 11–17 and Ex. D at 4–11); *see also* Hrg. Tr. 28:8–11("In our contention, GSK identified that the lipid nanoparticle in each of the Moderna accused products meets the liposome limitations."). Likewise, regarding the "cationic lipid" claim element, GSK maintains that the contentions specifically identify Moderna's proprietary SM-102 lipid in the accused products as corresponding to that limitation. Ans. Br. at 2 ("GSK specifically explains that the SM-102 lipid within those LNPs literally meets the 'cationic lipid' claim element because the SM-102 lipid is a cationic lipid.") (citing Op. Br. Ex. C at 11, Ex. D at 5, 28–32); *see also* Hrg. Tr. 37:23–38:2 ("But, again, there's zero confusion that what GSK is accusing in Moderna's product of meeting the cationic lipid element is SM-102.").

Moderna's motion to compel GSK to supplement its initial infringement contentions regarding the "liposomes," "lipid particles," and "cationic lipid" claim elements is **DENIED**. GSK's contentions are sufficient to provide notice to Moderna of GSK's literal infringement theories regarding the "liposomes," "lipid particles," and "cationic lipid" claim elements. Consistent with the applicable case law and the D. Del. Default Standard, GSK's contentions provide detailed, patent-specific claim charts that show how each of the "liposomes," "lipid particles," and "cationic lipid" claim elements for all asserted claims is met by each accused product, including narrative descriptions, citations, and screenshots of Moderna's technical documents on a limitation-by-limitation basis. *See, e.g.,* Op. Br. Ex. C at 11–17 ("liposomes"), Ex.

D at 4–11("lipid particles"), Ex. D at 5, 28–32 ("cationic lipid"). Because GSK's contentions identify the LNPs in Moderna's accused products as meeting the "liposomes" and "lipid particles" claim elements and Moderna's proprietary SM-102 lipid in the accused products as meeting the "cationic lipid" claim element, they adequately "identify where each limitation of each asserted claim is found within each accused instrumentality." *Personal Audio*, 2018 WL 11656746, at *1.

The Special Master does not find persuasive Moderna's arguments that seem to probe to some degree GSK's positions as to what the claim terms "liposomes," "lipid particles," and "cationic lipid" mean, and suggestion that GSK's initial infringement contentions should provide "some level of preliminary explanation of that meaning" (*see, e.g.,* Op. Br. at 2; Hrg. Tr. 13:10–14, 13:18–21, 17:2–11) because such disclosure is not required at this stage of the case, and is better suited and more appropriately handled as part of the Court's claim construction issue identification procedure and schedule for claim construction disclosures, as set forth in the Scheduling Order. *See* D.I. 35 at ¶ 8 (setting forth claim construction disclosure deadlines); *see also Princeton Digit. Image Corp. v. Harmonix Music Sys., Inc.*, C.A. No. 1:12-cv-01461, D.I. 318, slip op. at 8 (D. Del. May 14, 2018) ("[I]nfringement contentions are not meant to provide a forum for litigation on the substantive issues.") (quoting *SSL Servs., LLC v. Cisco Sys., Inc.*, 2016 WL 727673, at *8 (E.D. Tex. Feb. 24, 2016)).

The level of detail in GSK's contentions regarding the "liposomes," "lipid particles," and "cationic lipid" claim elements is sufficient to put Moderna on notice of GSK's literal infringement theories. These contentions will be further developed and refined as the case proceeds through fact and expert discovery, claim construction, and GSK's disclosure of final infringement contentions; but at this stage, GSK is not required to provide preliminary claim construction positions or otherwise prove its literal infringement case. *See Wi-Lan,* 2018 WL 669730, at *1.

Accordingly, Moderna's motion to compel GSK to supplement its initial infringement contentions as to literal infringement (D.I. 98) is **DENIED**.

B.      **Whether GSK Must Supplement Its Initial Infringement Contentions Regarding Its Doctrine of Equivalents Theories.**

Moderna argues that Plaintiffs' DOE contentions are deficient because they are conclusory and lack sufficient explanation and detailed analysis as to how the accused products perform the same function in the same way to achieve the same result as the claimed inventions. Op. Br. at 4 (arguing GSK's DOE contentions "are not backed up by any discussion, explanation or evidence" and rely on "the same pKa testing data that GSK relies on for its literal infringement contentions"). Moderna contends that "GSK's function-way-result statements are conclusory and provide no information or evidence as to how Moderna's products meet the claim limitations under DOE." Op. Br. at 4; *see also* Hrg. Tr. 24:5–15 ("GSK should at a minimum provide evidence and argument of Moderna's accused product operating the same function, the same way to get the same result as the claim limitations and explain how the string-cited references apply in that theory.").

In response, GSK argues that Moderna's Motion should be denied in this regard because the contentions provide Moderna with notice of GSK's DOE theories. Ans. Br. at 1. GSK argues that the contentions identify on a limitation-by-limitation basis how particular aspects of Moderna's accused products satisfy both the insubstantial differences test and the function-way-result test for the relevant claim elements. *Id.* at 3 (*citing Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 13-1668-LPS, 2017 WL 658469, at *4 (D. Del. Feb. 14, 2017). For example, regarding GSK's DOE theory under the insubstantial differences test for claim terms that require "cationic lipid" that has a "pKa . . . from 6.07 to 6.8," GSK maintains that the contentions explain that "[a]ny variation observed in the pKa of the cationic lipid SM-102" across each accused product "is insubstantial in the context of the claimed invention." Ans. Br. at 3 (citing Op. Br. Ex.

I at 86-87).  GSK maintains that the contentions also describe how the SM-102 lipid in Moderna's

accused products is equivalent to the "cationic lipid" claim element under the function-way-result

test, stating that the:

> SM-102 [lipid] (1) performs substantially the same *function* as a cationic lipid with a pKa of 6.07 to 6.8, by interacting electrostatically with a negatively charged backbone; (2) in substantially the same *way* as a cationic lipid with a pKa of 6.07 to 6.8, by adjusting charge in the presence of differing pH environments; (3) to obtain substantially the same *result* as a cationic lipid with a pKa of 6.07 to 6.8, by facilitating LNP formation and integrity.

*Id.* (citing Op. Br. Ex. I at 86–110) (emphasis in original).  GSK contends that it "detailed this

same DOE theory for each individual accused product, applying the insubstantial differences and

function-way-result tests to the properties of Moderna's LNPs." *Id.*

Moderna's motion to compel GSK to supplement its initial infringement contentions

regarding GSK's DOE theories is **DENIED**.  GSK's contentions are sufficient to provide notice

to Moderna of GSK's DOE theories.  The contentions provide adequate notice to Moderna of

GSK's DOE theories because they sufficiently identify on a limitation-by-limitation basis, how,

for example, the SM-102 lipid in Moderna's accused products is equivalent to the "cationic lipid"

claim element under the function-way-result test and contend that any variation observed in the

pKa of the cationic lipid SM-102 across each accused product is insubstantial in the context of the

claimed invention. *See, e.g.,* Op. Br. Ex. I at 86–110; *see also Intellectual Ventures I*, 2017 WL

658469, at *4 (citing *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir.

2016)).

GSK's contentions include narrative descriptions and citations to Moderna's technical

documents on a limitation-by-limitation basis, and identify, according to GSK, how the SM-102

lipid performs substantially the same function (i.e., "by interacting electrostatically with a

negatively charged backbone"), in substantially the same way (i.e., "by adjusting charge in the presence of differing pH environments"), to obtain substantially the same result (i.e., "facilitating LNP formation and integrity during formation, storage, administration, in vivo distribution, and endocytosis") as a cationic lipid with a pKa of 6.07 to 6.8. *Id.* As with GSK's literal infringement contentions, GSK's DOE contentions will likewise be further developed and refined as the case proceeds through fact and expert discovery, claim construction, and GSK's disclosure of final infringement contentions. At this stage, however, GSK's initial infringement contentions provide a sufficient level of detail to put Moderna on notice of GSK's DOE theories consistent with the applicable case law and the D. Del. Default Standard.

Accordingly, Moderna's motion to compel GSK to supplement its initial infringement contentions as to the doctrine of equivalents is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion (D.I. 98) is **DENIED**.

* * *

This Memorandum Opinion and Order is preliminarily submitted under seal as a precaution because the parties' briefing was filed under seal. Within three (3) business days of this Order, the parties shall jointly email the Special Master and advise of any proposed redactions.

IT IS SO ORDERED.

Dated: October 3, 2025

*Monte T. Squire*
_____
Special Master Monté T. Squire